## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **AARYAN & PRATHA, INC.,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Civil Action No. 2:16-274-CG** |
| | **)** | |
| **COSTCO WHOLESALE** | **)** | |
| **CORPORATION, and** | **)** | |
| **Costco WHOLESALE** | **)** | |
| **MEMBERSHIP, INC.** | **)** | |
| | **)** | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary

Judgment (Doc. 22-5)[1], Plaintiff's Response in opposition thereto (Doc. 35), and

Defendants' Reply (Doc. 40) and on Defendants' Motion to Strike the Affidavits of

Wayne Russell, Leslie Watson, and James McGuire (Doc. 41) to which Plaintiff has

responded (Doc. 44) and Defendants have replied (Doc. 45). For the reasons

explained below, the Court finds that Defendants' Motion to Strike (Doc. 41) is

GRANTED in part and DENIED in part and their Motion for Summary Judgment

(Doc. 22-5) is DENIED.

## PROCEDURAL BACKGROUND

Plaintiff, Aaryn & Pratha, Inc. ("A&P"), an Alabama corporation, owns and

---

[1] Defendants initially filed their motion in redacted form (Doc. 22), but this Court
will refer to the un-redacted version (Doc. 22-5) only.

operates a Shell branded convenience store and retail gas station located at 9264 Boyd Cooper Parkway in Montgomery, Alabama. (Doc. 1; Doc. 35 at 4). Defendants, Costco Wholesale Corporation and Costco Membership, Inc. (collectively "Costco"), are Washington and California corporations, respectively, both engaging in business in Alabama. (Doc. 35 at 4). Costco operates a retail store located at 8251 EastChase Parkway, in Montgomery, Alabama that sells gasoline to its members. (Doc. 22-5 at 8). The gas stations that are operated by the parties are located 0.7 miles apart. (Doc. 22-5 at 8; Doc. 35 at 4).

On April 18, 2016, Plaintiff filed a Complaint seeking Preliminary and Permanent Injunctive Relief and damages against Defendants alleging Defendants violated the Alabama Motor Fuel Marketing Act ("AMFMA") 1977 Ala. Code § 8-22-1. (Doc. 1). Specifically, Plaintiff contends that Costco sold regular unleaded gasoline below cost on sixteen separate days from March 2016 to April 2016, in violation of the AMFMA with the intent to injure Plaintiff and other competitors in the same market area. (Doc. 1 at 3-5). Plaintiff alleges that as a result of Defendants' violation, it has suffered irreparable harm and damages, including a decrease in gasoline sales. (Doc. 1 at 3, 5).

After filing their Answer (Doc. 32)[2], Defendants filed a Motion for Summary Judgment asserting that they are entitled to judgment as a matter of law because they were meeting competition in good faith pursuant to Ala. Code § 8-22-8(b).

_____

[2] Document 32 is Defendants' Amended Answer. The initial Answer was filed on June 17, 2016. (Doc. 16).

Plaintiff has responded asserting that Defendants neither acted in good faith nor properly established that the retailers that it matched were competitors under the AMFMA (Doc. 35) and Defendants timely replied (Doc. 40). In support of its response, Plaintiff submitted multiple exhibits including the affidavits of Leslie Watson ("Watson") (Doc. 35-4), Wayne Russell ("Russell") (Doc. 35-5), and James McGuire (McGuire")(Doc. 35-13). Thereafter, Defendants filed a Motion to Strike the Affidavits of Russell, Watson, and McGuire (Doc. 41) to which Plaintiff has responded (Doc. 44) and Defendants have replied (Doc. 45). The motions are now ripe before this Court.

## FACTS

The Montgomery Costco's gasoline prices are set at least once per day and typically twice per day by Costco's motor fuel department located in King County, Washington. (Doc. 22-5 at 12; Doc. 22-8 at ¶¶ 3, 4, 11). Each morning the motor fuel department reviews information from www.app.opispricepro.com ("PricePro") – a retail gasoline comparative pricing tool – that compares the Montgomery Costco's gasoline prices to pre-selected area competitors. (Doc. 22-5 at 12; Doc. 22-8 at ¶ 5). After reviewing the competitors' prices, the fuel department sets Costco's price, frequently resulting in matching the price of a competitor. (Doc. 22-5 at 13; Doc. 22-8 at ¶ 10). Costco's motor fuel department typically repeats this process in the late afternoon during weekdays using PricePro data collected throughout the day. (Doc. 22-5 at 13; Doc. 22-8 at ¶ 11). Once the fuel department sets the price of gasoline, Costco employees change the relevant advertisements to reflect the updated gas

price.  (Doc. 22-5 at 13; Doc. 22-8 at ¶ 12).

According to Costco, there are sixteen competitors that it daily reviews using PricePro, all of which sell the same product – regular unleaded gasoline – and all of which are located within a 7.5 mile radius of the Montgomery Costco.  (Doc. 22-5 at 10, 16; Doc. 22-8 at ¶¶ 7, 8).   Certain of these competitors are pre-selected by Costco's motor fuel department "based on the competitor's location, pricing history, distance from [Costco's] retail stores, and market data on the home or business location of [Costco's] members/customers."  (Doc. 22-5 at 9; Doc. 22-8 at ¶ 6).  Costco tracks the location of its members who actually buy gasoline at the Montgomery location and tracks the gasoline retailers located near the homes and/or businesses of Costco gasoline buying customers.  (Doc. 40 at 5; Doc. 22-7 at 3-6).  On the sixteen days at issue in the Complaint, Costco asserts it was meeting the price of either the Quick Serve on Wares Ferry Road, Sam's Club on Eastern Boulevard, Liberty on Atlanta Highway, Mapco on Vaughn Road, or Valero on Vaughn Road.  (Doc. 22-5 at 20-21; Doc. 22-8 at 14-18).

In its response, A&P does not dispute the above stated facts.  Rather, it argues that the gas retailers selected and identified by Costco are not competitors under the AMFMA and that Costco did not act in good faith when it met the price of those alleged competitors.  (Doc. 35, generally).  A&P has presented facts that the five retailers that Costco used as competitors are located more than five miles from Costco, on different roads, on different traffic routes, and are either not equipped to sell or do not typically sell a significant amount of gas so as to be true competitors of

4

Costco.  (*Id*).  A&P also submitted affidavits of retail gasoline marketers stating that local gasoline retailers do not consider several of Costco's alleged competitors to be realistic competitors and stating that Costco does not consider several gas retailers as competitors that are closer in proximity to it and are on same road or traffic thoroughfare as its tracked competitors.  (*Id*).  Costco does not dispute the facts presented by A&P.

## DISCUSSION

### A.     Motion to Strike

Given that a determination on Defendants' Motion to Strike will potentially impact the analysis of Defendants' Motion for Summary Judgment, this Court will address Defendants' Motion to Strike first.

Because the challenged affidavits were submitted in opposition to a motion for summary judgment, they must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) provides that an affidavit opposing a motion for summary judgment "shall be made on *personal knowledge,* shall set forth such facts as would be *admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed.R.Civ.P. 56(e)(emphasis added).  Affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1112 (M.D. Ala. 2003); *Story v. Sunshine Foliage World, Inc.*, 120 F.Supp.2d 1027, 1030 (M.D. Fla. 2000). *Accord, Leigh v. Warner Bros., Inc.*, 212 F .3d 1210, 1217 (11th Cir.

2000).

Sworn statements which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *See, e.g., Thomas, 248 F.Supp.2d at 1112*; *Givhan v. Electronic Eng'rs, Inc.*, 4 F.Supp.2d 1331, 1334 (M.D. Ala. 1998). The motion to strike should state precisely the portions of the affidavit to which objection is being made, and the grounds therefor. *Givhan*, 4 F.Supp.2d at 1334 citing to *Olympic Ins. Co. v. H.D. Harrison. Inc.*, 418 F.2d 669, 670 (5th Cir. 1969). However, the Court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the testimony or statement. *Givhan*, 4 F.Supp.2d at p. 1334 n. 2. In the context of a non-movant's burden on summary judgment, the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value" and cannot defeat a well-supported motion for summary judgment. *Evers v. General Motors*, 770 F.2d 984, 986 (11th Cir. 1985)(citations omitted).

Furthermore, Federal Rule of Evidence 702 permits a person qualified as an expert to testify in the form of an opinion if, among other reasons: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "A district court is thus required to act as a gatekeeper 'to make certain that an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the practice of an expert in the relevant field.'" *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Defendants' seek to strike the expert testimony of Wayne Russell, Leslie Watson, and James McGuire because their testimony "is conclusory and unreliable, and, therefore, does not meet requirements Federal Rule of Evidence 702 for at least four reasons: (1) the Purported Experts expressly disclaim that they are experts; (2) the Purported Experts admit that their opinions are not based upon sufficient facts or data or are otherwise arbitrary; (3) the Purported Experts' testimony goes to a party's state of mind, which is not the proper subject of expert testimony; and (4) the Purported Experts' testimony reaches legal conclusions that are reserved to the determination of this Court." (Doc. 41 at 3)(emphasis removed). In response, Plaintiff states "it is [the] breadth of experience that forms the foundation and the basis of these gentlemen to offer the testimony now attacked by Costco regarding the gasoline markets at issue; who a competitor is and who a competitor is not with respect to a given facility by analyzing the nature of the facility including volumes of fuel sold; distances from competitors including Costco; whether a location is on the same traffic pattern as a competitor at another location including Costco, etc." (Doc. 44 at 3).

Wayne Russell ("Russell") is the President of Russell Petroleum Corporation ("Russell Corp."), an Alabama Corporation located in Montgomery, Alabama, in the wholesale and retail gasoline business. (Doc. 35-5 at 1). Mr. Russell has been in

the gasoline business in Central Alabama, including in the City of Montgomery for forty-nine years during which time he has marketed gasoline to every market within the city. Russell Corp. supplies fuel to forty-two locations in the City of Montgomery and surrounding communities known as "Kwik Shop" and "PetroPlus". (*Id.*) Mr. Russell has surveyed competitive pricing and priced gasoline over the course of his forty-nine years to the Russell Corp. locations. (*Id.*)

Leslie Watson ("Watson") is President of Tom Jones, Inc., an Alabama Corporation that, among other things, markets gasoline at retail in Alabama, including in the City of Montgomery. (Doc. 35-4 at 1). Mr. Watson has worked in the gasoline business for fifty-two years and during that time he has marketed gasoline in every market within the City of Montgomery. (*Id.*) He has additionally surveyed competitive pricing throughout the City of Montgomery and beyond for 32 years and his employer supplies fuel to thirteen locations within the City of Montgomery and Montgomery and Autauga Counties in facilitates branded as "Liberty." (*Id.*)

James McGuire ("McGuire") is the President of McGuire Oil Company based in Mobile, Alabama, which is principally a Chevron-branded distributor of motor fuel products. (Doc. 35-13 at 2). McGuire Oil has been in the gasoline business for over forty-eight years and supplies approximately sixty locations throughout Southwest Alabama, the Panhandle of Florida, and Southeast Mississippi. (*Id*). James McGuire has personally been in the gasoline business for approximately forty-eight years.

### 1.     Disclaimer of Being Experts

Costco first asserts that all three affidavits should be stricken because each of the affiants disclaim being experts. (Doc. 41 at 3-5). Specifically, Costco points to the following testimony in support of exclusion:

> Q: Mr. Russell, you have given an affidavit in the case we're here about today. I believe that you've been offered up as an expert in the case that we're here about today. Is that what you understand as well?
>
> A: I'm not an expert, but I've been in the business a long time.
>
> [...]
>
> Q: . . . Have you ever been retained as an expert in any litigation?
>
> A: No expert. I'm not an expert."

(Doc 41 at 4)(internal citations omitted). Costco further points out that Mr. Russell (1) has never been qualified as an expert in motor fuel in any place for any purpose, (2) has no specialized training or education about motor fuel pricing, and, (3) did not personally set prices for any of his owned retail locations, and has not for over a decade. (Doc. 41 at 4)(internal citations omitted). Similarly, when asked by Costco whether he was an expert, Mr. Watson stated that he (1) did not regularly hold himself out as an expert, (2) had never previously offered expert testimony or been qualified by a court to do so, (3) had never prepared any documents on the gasoline retail market in Montgomery outside of pricing surveys, and (4) had never conducted any research on consumer sensitivity to gasoline prices. (*Id*.)(citations omitted). Finally, when asked whether he was giving expert testimony, Mr. McGuire, stated "[w]ell, I'm not saying to anybody I'm an expert to testify today" and, thereafter, stated "I think I can answer your question. I think a legal term, no

judge has ever declared me an expert. I've never known myself out --put myself out as an expert. I've been in this business for a long time, so I have a lot of experience in the gasoline wholesale and retail business, but I don't consider myself an expert . . . in anything. . . I don't claim to be an expert." (Doc. 41 at 5) (internal citations omitted).   Mr. McGuire also stated that he had never given prior testimony as an expert or been designated as an expert and he had never offered a prior expert report. (Doc. 41 at 5) (internal citations omitted).

With regard to Defendants' first ground for excluding the affidavits, this Court finds Defendants' position to be without merit.  While Rule 702 requires specialized knowledge and skill before one can be considered an expert, the Court is unaware of any requirement that the purported expert hold themselves out to be an expert and Defendant has provided this Court with no case law to support such a position.  Whether or not someone considers themselves to be an "expert" has no bearing on whether or not their opinions can be considered as expert testimony based on their education, knowledge, and experience under Federal Rule of Evidence 702.

### 2.  Insufficient Facts or Data

Costco next asserts that all three affidavits should be excluded because the affiants' testimony is not based on sufficient facts or data.  (Doc. 41 at 5-8). Specifically, Costco argues that McGuire's affidavit suggests he has specialized knowledge of the legislative history of the AMFMA, but when asked about his involvement with the passage of the AMFMA, Mr. McGuire testified that he didn't

know where the language for the AMFMA came from, that he didn't know "the procedure of how [the AMFMA] got passed", that he didn't know who the Senate sponsor for the bill was, he didn't know what committees were involved in the passage of the AMFMA, and most importantly that he did not have any input at all on the definition of the terms "competitor" or "market area" under the AMFMA. (Doc. 41 at 6)(internal citations omitted). Costco contends, therefore, that "Mr. McGuire's testimony regarding the AMFMA –in addition to reaching impermissible legal conclusions, as discussed below –is unreliable and irrelevant." (*Id.*)

Costco also takes issue with Mr. Watson's testimony because he (1) was not involved with the passage of the AMFMA, (2) did not know where his customers lived, (3) did not know how far individuals were willing to drive in order to take advantage of better pricing, (4) did not have any direct experience with PricePro or GasBuddy, (5) did not know where Costco bought its gasoline from or at what price, and (6) provided testimony noting his opinion that Costco should not consider retailers with sales volume of less than 50,000 gallons per month was "an arbitrary line." (Doc. 41 at 6-7)(internal citation omitted). Accordingly, Costco contends, "[h]is testimony in this case is not based on sufficient facts or data, but is admittedly conclusory and 'arbitrary'" and "is due to be excluded." (*Id.* at 7).

Lastly, Costco points out that Mr. Russell was (1) not involved with drafting the language of the AMFMA, (2) did not know where his customers lived, (3) did not know how far individuals were willing to drive in order to take advantage of better pricing, (4) did not know where Costco's customers lived or worked, and (5) did not

know how Costco selected its prices.  (*Id*. at 7-8). (internal citation omitted). As a result, Costco contends Mr. Russell's testimony in is "conclusory and based on insufficient facts and data" and "is due to be excluded."  (*Id*.)

While there is no dispute that the above classification of the testimony of Russell, Watson, and McGuire is accurate, Costco fails to make any argument that the absence of the above knowledge justifies exclusion of the respective affidavits in their entirety.  More specifically, Costco does not assert how the above testimony establishes that all of the information and every opinion within the affidavits should be excluded or that none of the affiants could potentially be experts for the sake of offering any opinion based on their experiences as market retailers in Montgomery.  As such, Costco's argument seeking total exclusion of the relevant affidavits based on a lack of sufficient facts and data is denied.  To the extent that Costco seeks to exclude portions of the relevant testimony based on lack of the above-discussed information, Costco does not indicate which specific opinions it seeks to exclude beyond its request to exclude "testimony regarding AMFMA".  (Doc. 41 at 6).  Such a generalization fails to identify the specific portions of each affidavit that Costco seeks to exclude.  See *Givhan*, 4 F.Supp.2d at 1334 ("The motion to strike should state precisely the portions of the affidavit to which objection is being made, and the grounds therefor.") citing to *Olympic Ins. Co. v. H.D. Harrison. Inc.*, 418 F.2d 669, 670 (5th Cir. 1969).  As a result, while some of the opinions of the Russell, Watson, and McGuire may be subject to exclusion for the grounds stated by Costco, Costco has not sufficiently identified those portions to which the above

12

grounds apply such that the same could be stricken.[3]

### 3. Mindset and Intent

Costco next argues that the testimony of Russell, Watson, and McGuire should be stricken because the affiants' testimony goes to Costco's mindset and intent, an improper subject of expert testimony. (Doc. 41 at 8-9). Specifically, Costco seeks to exclude Russell's, Watson's, and McGuire's testimony that Costco was manufacturing "a meeting competition defense for the purpose of trying to beat the law. . .". (*Id*.) (internal citations omitted).

In support of its position, Costco asserts that, "[s]uch inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Tindall v. H & S Homes, LLC*, 2012 WL 3241885, *12 (M.D. Ga. 2012)(internal quotations and citations omitted). Plaintiff's Response (Doc. 44) does not address the admissibility of these specific statements. Nevertheless, this Court agrees that the subject opinions of Russell, Watson, and McGuire that relate to Costco's alleged intent are not admissible and should be stricken. Specifically, any opinion of Russell, Watson, or McGuire that Costco was trying "manufacture a defense" or "beat the law" are stricken.[4]

---

[3] As the Court understands Costco's position, the portions of the affidavits that should be stricken due to insufficient facts or data are the same as those portions which are due to be stricken because they contain legal conclusions. As a result, for the reasons set forth herein below, it is of no consequence that the opinions regarding the AMFMA are not being struck for lack of sufficient facts or data.
[4] Any opinions relating to Costco's intent are also due to be stricken as legal conclusions because Costco's intent is demostartive of whether it acted in "good

### 4. Legal Conclusions

Lastly, Costco asserts that the subject affidavits should be stricken because they contain conclusions of law. Namely, the affiants all testify in some form that, in their opinion, the gas retailers that Costco monitors as competitors are not true competitors *under the AMFMA*. (Docs. 35-4, 35-5, 35-13, generally). Costco contends that whether or not the retailers Costco price matched are competitors under the AMFMA, is the ultimate issue for the Court to decide and Costco takes issue with the affiants' opinions relating to the legal meanings of certain words in the AMFMA. (Doc. 41). In response, Plaintiff argues only that the affidavit of Costco's expert, Dr. Robicheaux stated an exact, albeit opposite opinion, i.e. "that all gasoline retailers that Costco is currently tracking […] are in competition with Costco" (Doc. 44 at 4; Doc. 22-6 at 10). Accordingly, A&P argues that because Dr. Robicheaux's opinions are admissible, then the opinions of Russell, Watson, and McGuire are also admissible. (Doc. 44 at 4). Such an argument is unavailing.

First, there is no motion before this Court pertaining to the admissibility of Dr. Robicheaux's opinion and, to the contrary, A&P agrees that Dr. Robicheaux's opinions can be validly considered. Second, a plain reading of Dr. Robicheaux's affidavit indicates that his opinions are based on his expertise in marketing and nowhere in his affidavit does Dr. Robicheaux provide an opinion as to the legal meaning of the AMFMA or the terms "competitors" or "market area" as Plaintiff

---

faith", an element of their defense and an issue that is before this Court for the reasons stated in paragraph 4, below.

contends.  Lastly, whether or not Dr. Robicheaux is qualified to provide an expert opinion under the Federal Rules has no bearing on whether Russell, Watson, or McGuire are individually qualified to provide expert testimony.

The Eleventh Circuit has held that "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005).  Accordingly, Costco's request to strike the testimony of Russell, Watson, and McGuire which are legal conclusions is granted.[5] Specifically, any opinions of Russell, Watson, or McGuire as to the meaning of the terms "competitors" or "market area" under the AMFMA or any opinion that Costco was not acting in accordance with the AMFMA are legal conclusions and hereby stricken.  However, while the legal conclusions contained in the affidavits are not admissible, it is not necessary to strike the affidavits in their entirety. *See Givhan*, 4 F.Supp.2d at 1334 n.2.

### B.  Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

---

[5] The above ruling does not entirely alter the discussion on the pending Motion for Summary Judgment as there remain portions of the subject opinions that are admissible.

*Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential

element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### 1.  The Alabama Motor Fuel Marketing Act ("AMFMA")

"Alabama is one of many states which [have enacted 'below-cost' statutes] governing the sale of motor fuel. That statute is known as the Alabama Motor Fuel Marketing Act (the 'AMFMA' or the 'Act'). The stated purpose and intent of the

AMFMA is to curb predatory pricing for the protection of consumers and promoting fair competition in motor fuel marketing." *Young Oil Co. v. Racetrac Petroleum, Inc.*, 757 So. 2d 380 (Ala. 1999) citing to Ala. Code [1975], § 8–22–3 (1993 Repl.Vol.); *BP Exploration & Oil, Inc. v. Hopkins*, 678 So.2d 1052, 1053 (Ala.1996).

The AMFMA provides that:

It shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition.

Ala. Code § 8-22-6.

However, while the AMFMA contains a proscription against below-cost sales, § 8–22–8(b) of the Act expressly allows below cost sales made in good faith to meet the equally low price of a competitor in the same relevant market:

(b) It is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor in the same market area on the same level of distribution selling the same or a similar product of like grade and quality or is exempt under Section 8–22–13.

Ala. Code [1975], § 8–22–8(b).

Costco does not dispute for purposes of summary judgment that it was selling fuel below cost[6] and the parties agree that the AMFMA is controlling and that matching the price of a competitor is a defense to selling fuel below cost pursuant to the AMFMA. Thus, the only issue before this Court is whether Costco has proven that there is no question of material of fact that it was meeting competition under

---

[6] Costco has reserved such an argument for a later date. (Doc. 22-5, FN 4).

the AMFMA. More specifically, whether there is no question of material fact that Costco (1) in good faith (2) met an equally low price (3) of a competitor (4) in the same market area (5) on the same level of distribution (6) selling the same or a similar product of like grade and quality.[7]

## 2. Meet an Equally Low Price

Costco asserts that during the relevant time period, it was meeting the price of another retailer. In support of its position, Costco provided the following list showing the retailer it matched on the respective day:

| | |
|---|---|
| March 10, 2016: $1.489 | Quick Serve: $1.489 |
| March 14, 2016 (morning): $1.589 | Quick Serve: $1.629 |
| March 14, 2016 (afternoon): $1.629 | Quick Serve $1.629 |
| March 15, 2016: $ 1.629 | Quick Serve/ Sam's Club:$ 1.629 |
| March 16, 2016 $ 1.629 | Quick Serve/ Sam's Club $ 1.629 |
| March 17, 2016 $1.629 | Quick Serve/ Sam's Club $1.629 |
| March 21, 2016: $1.629 | Sam's Club $1.629 |
| March 28, 2016 $1.629 | Sam's Club $1.629 |
| March 29, 2016 $1.629 | Sam's Club $1.629 |
| March 30, 2016 $1.629 | Sam's Club $1.629 |
| March 31, 2016 (morning) $1.679 | Sam's Club $1.679 |
| March 31, 2016 (afternoon) $1.679 | Sam's Club $1.679 |
| April 7, 2016 $1.679 | Sam's Club$1.679 |
| April 11, 2016 $1.749 | Mapco/Quick Serve $1.749 |
| April 12, 2016 $1.749 | Quick Serve/Valero$1.749 |
| April 13, 2016 $1.749 | Quick Serve $1.749 |
| April 14, 2016(morning): $ 1.759 | Liberty$ 1.759 |
| April 14, 2016 (afternoon): $ 1.759 | Liberty $ 1.759 |
| April 15, 2016 $1.759 | Sam's Club $1.759 |

---

[7] A&P does not challenge Costco's position that it is on the same level of distribution and selling the same or a similar product of like grade and quality as the retailers Costco has identified.

(Doc. 22-5 at 14). A&P disputes that the above prices are accurate on March 16, 2016, March 28-31, 2016, and April 15, 2016. (Doc. 35 at 23-25). A&P argues that on those dates, Costco's pricing data of Sam's is incorrect and, therefore, regardless or whether Sam's is competitor under the AMFMA, Costco's meeting competition defense fails on those respective days. In support of its position, A&P relies on its own chart (Doc. 35 at 23) based off the price tracking sheets of Wayne Russell (Doc. 35-5 at 8-26). In reply, Costco asserts that A&P has simply misread Russell's own data and the chart in A&P's motion is wrong. (Doc. 40 at 27- 33). A review of Russell's pricing data from which A&P's chart was supposedly derived, does confirm Costco's pricing on March 16, 2016 (Doc. 35-5 at 12) and March 28, 2016 (*Id*. at 16). Further, Costco has provided its pricing data for March 28-31, 2016 and April 15, 2016 (Doc. 22-8 at 14-18), which shows the fluctuating gas prices between Costco and Sam's throughout the day, rather than the single 8 a.m. price snap shot that Russell's pricing data provides and A&P has not provided any factual evidence that materially disputes the same. As such, there is no genuine issue of material fact as to whether Costco was meeting the price of another retailer on the days in question.[8]

### 3. Competitors under the AMFMA

The AMFMA defines "competition" "as any person who competes with

---

[8] The Court does not conclude that Costco was, in fact, meeting the price of another retailer, but only that A&P has failed to present probative evidence of its claim that Costco was not meeting another retailer's price at this stage.

another person in the same market area at the same level of distribution." Ala. Code § 8-22-4 (13). Costco submits that on each of sixteen days at issue, it was, at the very least, meeting the prices of one of three competitors, i.e., Quick Serve on Wares Ferry Road, Sam's Club on Eastern Boulevard, or Liberty on Atlanta Highway, and up to five competitors, adding Mapco on Vaughn Road and Valero on Vaughn Road. (Doc. 22-5 at 20-21). In support of its motion, Costco has submitted an affidavit of its retail and marketing expert, Dr. Robert Robicheaux, Ph.D., which provides that he considered whether Costco was positioned as a destination retailer, the volume of business that Costco was designed to accommodate, Costco's market reach, Costco's location relative to interstates and highways, the availability of substitute products, the location of Costco's tracked competitors, the distance of the relevant competitors from Costco's Eastchase Parkway retail store, and the home or business location of Costco's customer base. (Doc. 22-6 at 7).[9] He also considered a number of factors that retail marketers normally review when defining a business's market area and market competitors. (*Id*). Dr. Robicheaux then stated:

> Based on the facts and considerations mentioned herein, I have reached several conclusions. First, Costco broadly competes for retail gasoline sales in the Montgomery metro area. Second, Costco's decision to directly compete with gasoline retailers within a 7.5-mile radius of their Montgomery retail store is very conservative and fully justified. Third, Costco's primary competitor within the Montgomery metro area is the Sam's Club at 1080 Eastern Boulevard. And finally, all gasoline retailers that Costco is currently tracking within the Montgomery area—including the Quick Serve on Wares Ferry Road—are in competition with Costco.

---

[9] Costco also submitted the affidavit of Richard C. Rawlings (Doc. 22-8) and its price tracking data from March 10, 2016 to April 15, 2016 (Doc. 22-9).

Therefore, given Costco's market position as a destination retailer, its ability to accommodate a large volume of business, its market reach; its location relative to interstates and highways, the availability of substitute products; and the location of Costco's tracked competitors, among other factors, it is my opinion that Costco directly competes with all the gasoline retailers it is currently tracking in the Montgomery market.

(*Id.* at 10). Costco has additionally submitted "scatter maps" which map the home addresses and work locations of Costco's Montgomery members which show that it has a significant amount of gas buying members located near every gas retailer it tracks as a competitor. (Doc. 22-5 at 20; Doc. 22-7 at 3-6).

For legal support, Costco relies on the Alabama Supreme Court's decision in *Speedway/SuperAmerica, L.L. C. v. Phillips Truck Stop, Inc.*, 782 So.2d 255 (Ala. 2000) wherein the Court determined that a truck stop located 80 miles away from a defendant truck stop should be considered "a competitor in the same market area" for purposes of the meeting competition defense. In *Speedway*, the Alabama Supreme Court adopted the reasoning of the Middle District of Tennessee in *Tennessean Truckstop, Inc. v. MAPCO Petroleum, Inc.*, 728 F.Supp. 489 (M.D. Tenn. 1990)[10] and held that based on the "commercial realities of the truck stop competitive market"—the defendant was, in fact, in competition with a truck stop located over 80 miles away, on a different interstate." *Id* at 258. Relying on

---

[10] In *Tennessean Truckstop*, the Court determined that truck stops located 200 miles away from the defendant truck stop were competitors for purposes of the Meeting Competition Defense holding that the U.S. Supreme Court's analysis in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) applied. The Middle District of Tennessee found that the relevant market area should be defined as the markets "which correspond to the commercial realities of the industry." *Tennessean Truckstop, Inc.*, 728 F.Supp. at 490. (citations omitted).

*Speedway*, Costco asserts that "the relevant analysis of a 'competitor' under Alabama law must center on the "commercial realities of [Costco's] industry" which establishes that "Costco's tracked competitors is a 'competitor' under the AMFMA" as a matter of law. (Doc. 22-5 at 28-29). In that respect, Costco argues that the commercial reality of the gas retail market establishes that competitors are "those gasoline retailers selling gasoline (a fungible commodity) to Costco's 'same group of customers' near their home and work addresses". (Doc. 40 at 9).

In response, A&P argues that Costco "is either meeting the price of 'competitors' that do not fall within the definition of 'competition' or more specifically is not a 'competitor' as provided in the AMFMA." (Doc. 35 at 5). In support of it position, A&P relies on the undisputed locations of Costco's tracked competitors and their proximity to Costco and presents fact and opinion testimony via the affidavits of Russell, Watson, and McGuire[11] (discussed herein above) to rebut that Quick Serve, Sam's Club, Liberty, Mapco, and Valero are competitors of

_____

[11] Plaintiff additionally submitted the following exhibits: a copy of a Memorandum Opinion and Order against Costco in a similar case in the Northern District of Alabama, Northeastern Division (Doc. 35-1); a list of the 16 alleged competitors identified by Costco indicating the distance each competitor is from Costco (Doc. 35-2); excerpts from the deposition of Richard Rawlings (Doc. 35-3); a map of the City of Montgomery with Costco, A&P, and the 16 alleged competitors circled (Doc. 35-6); an Affidavit of Tony Powell (Doc. 35-7); an Affidavit of Bobby Patel (Doc. 35-8); a Memorandum Opinion in Campbell & Sons Oil Company, et al., v. Murphy Oil USA, Inc. (in the Northern District of Alabama, Northeastern Division) granting a temporary restraining order (Doc. 35-9); a Order in Campbell & Sons Oil Company, et al., v. Murphy Oil USA, Inc. (in the Northern District of Alabama, Northeastern Division) granting a permanent injunction (Doc. 35-10) and; a copy of Costco's Pricing Philosophy (Doc. 35-11); and excerpts from the Deposition of Robert Robicheaux (Doc. 35-12).

Costco under the AMFMA.[12]  More specifically, A&P argues that the competitors selected by Costco are not true competitors because they are outside of Costco's "market area" i.e., they are located several miles away, on different traffic thoroughfares, or are not equipped to compete with the amount of sales that Costco generates.  (Doc. 35 at 7-21).  A&P does not dispute that Costco tracks its gasoline buying members by the location of their home and work place, but rather argues that a number of other factors should be considered when determining the relevant "market area" and whether a retailer is a "competitor".[13]

In support of its position, Plaintiff relies heavily on the affidavits of Russell, Watson, and McGuire wherein the affiants opine that the comps used by Costco, especially Quickserve, are not a true competitors of Costco based on the experience of each affiant, the location of Costco and its proximity to the selected competitors, the traffic thoroughfares in the City of Montgomery, and the amount of fuel that Quick Serve sells in an average month.  More specifically, Plaintiff relies on the affidavit of Mr. Russell, wherein he stated as follows:

> Not only is that Quick Serve almost six (6) miles from the Costco facility, it is not on the same traffic route, is off the beaten path, in a poor neighborhood, and in fact requires some effort and a number of turns to get to it from the Costco location including going through a neighborhood from the Atlanta Highway to get to it at the corner of Wares Ferry Road and Burbank Drive. I

[12] A&P additionally rebuts that the other gas retailers identified by Costco are competitors under the Act. However, the only retailers Costco claims to have "met" for purposes of its defense are Quick Serve, Sam's Club, Liberty, Mapco, and Valero. Therefore, it is unnecessary for this Court to discuss whether or not the remaining retailers are competitors under the Act.

[13] A&P does not assert a geographic "market area" that would be appropriate in this specific action under the AMFMA.

understand that Quick Serve sells on average only 17,000 gallons of fuel a month. Based on my 50-plus years' experience in the gasoline business in the City of Montgomery and in these very markets, I contend it is not only inappropriate for Costco to contend Quick Serve is a competitor of Costco's for gasoline sales, it's absurd to claim such. […]Of the remaining sixteen (16) 'comps' Costco claims to use to set its retail prices, three (3) of them are five (5) or more miles from Costco; six (6) more than four (4) miles away; eleven (11) more than three miles away; and none of them on the same traffic thoroughfare as Costco.

(Doc. 35-5 at 4, 6). Mr. Watson similarly opined, "[Quickserve] is simply not a competitor because of where it is located, that fact that it is off the beaten path, the fact that it only does 18,000 gallons a month in fuel sales, etc.".  Mr. McGuire also opined that:

Costco, nor any facility doing half million gallons of fuel sales a month, would never give any thought whatsoever to the pricing of fuel by a facility like the Quick Serve that has been identified to me at 6000 Wares Ferry Road in Montgomery doing 18,000 gallons a month, much less tucked in a neighborhood off the beaten path from Costco and some five and one-half miles from Costco."  […] "…I have reviewed, incredibly 14 of Costco's 16 listed "comps" are more than three miles from Costco and none of those on the same traffic thoroughfare as Costco. Even more incredible is there are sites on there such as the Quick Serve I have referred to above, the Liberty at 6824 Atlanta Highway, the Entec and the Beeline that are five and a half miles or more from Costco with the Entec and Beeline locations roughly seven or more miles away.

Doc. 35-13 at 3, 4).  A&P further relies on these affidavits, along with the affidavit of Plaintiff (Doc. 35-8), to show the undisputed fact that there are several gas retailers which are closer to Costco or are on the same traffic thoroughfare which Costco does not track as competitors. (*See* Doc 35-5 at 6 "My three retail locations referenced above are all within the 7.5 mile radius which Costco indicates it uses to identify its pricing comps.  Curiously, none of my locations are on Costco's list of

sixteen (16), even tough two of them are independent branded and one Shell-branded. [...]; Doc. 35-4 at 5 "My two retail locations referenced above are within the 7.5-mile radius which Costco indicates it uses to identify its pricing comps. Curiously, only my location on Boyd Cooper Drive is on Costco's list of sixteen (16): doc. 35-8 at 2-3 "I would believe Costco would consider me a competitor of it given the close proximity. However, I note that my location is NOT on the list of 16 "comps" which I have been shown, and which I understand Costco claims it uses to make its daily retail pricing decisions on gasoline.")

In support of its position, A&P relies heavily on *Campbell & Sons Oil Co., et al. v. Murphy Oil USA, Inc.*, 99-50-3176NE (N.D. Ala. May 7, 2001) (Doc. 35-9) wherein the Court, in granting a temporary restraining order against defendant, found that Murphy Oil had not established that it was "meeting competition," in part, because the alleged competitors were "outside the same market area". In that case, the alleged competitors were "three to four miles north, and five to six miles south, of defendant's station." (Doc. 35-9 at 18).[14]

There is very little case law that establishes whether - as a matter of law - a gas retailer has met its burden to establish that it was meeting the price of a competitor pursuant to the AMFMA. In fact, the only binding case from which

---

[14] A&P also relies on the *The Pantry, Inc. v. Costco Wholesale Corporation, et al.*, 5:06-CV-04910-UWC (N.D. Ala. May 9, 2008) (Doc. 35 at 12-13), an opinion that was, as pointed out by Costco, vacated by the Court (Doc. 40 at 8) following the filing of a Joint Motion for Entry of Court Order Vacating Court's Order Denying Summary Judgment and Memorandum Opinion. (*Pantry*, 5:06-CV-04910-UWC at Doc. 50 (N.D. Ala. May 9, 2008). As such, *Pantry* will not be discussed herein.

direction can be drawn -- *Speedway* -- establishes that the "market area" for purposes of a meeting competition defense is based on the "commercial realities of the market". Speedway, 782 So.2d at 258. However, contrary to the facts contemplated by the Alabama Supreme Court in *Speedway*, the relevant market in this action is one for retail gas in a city. Therefore, despite the fact that it is binding, *Speedway* is factually dissimilar from the case at hand. Further, other non-binding decisions in district courts have not been in unison in their findings. For example, in Florida[15], the Middle District Florida, Orlando Division, found that a gas retailer who matched the prices of other gas retailers within a 10-mile stretch established as a matter of law a meeting competition defense and the court granted a motion for summary judgment for Defendants. *See NJN Systems, Inc. v. Sunoco, Inc.*, 95 F.Supp.3d 1330 (M.D. Fla. 2015). Despite the fact that *NJN Systems* is a Florida case, it is notable because the Court in analyzing the relevant market within a given geographic area relied on the Eleventh Circuit's observation that "[t]he relevant market is the 'area of effective competition' in which competitors generally are willing to compete for the consumer potential, and not the market area of a single company." *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985) (addressing claim under Sherman Act). Further, the *NJN* Court relied on the Supreme Court's observation that, "although the geographic market in some instances may encompass the entire Nation, under other circumstances *it may*

---

[15] In Florida, fuel sales below cost or in a discriminatory fashion that damage competition violate the FMFMPA.

*be as small as a single metropolitan area." Brown Shoe Co. v. United States,* 370

U.S. 294, 337, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (emphasis added).[16]

Conversely, the Northern District of Alabama in *Campbell* found that a

defendant had not established that it was "meeting competition" because the

alleged competitors were "three to four miles north, and five to six miles south, of

defendant's station." (Doc. 35-9 at 18). In *Campbell*, the Court relied on Judge

Richard Posner's remark in Economic Analysis of Law that courts tend to define

"market area" "to include in the market those sellers who actually sell to the same

group of customers and exclude those who do not," and the Eleventh Circuit's

holding that "the boundaries of the product market are determined by the

reasonable interchangeability of the use or the cross-elasticity of demand between

the product and substitutes for it." (Doc. 35-9 at 19). Notably, both Costco and A&P

cite to Posner's language in support of their respective positions. (Doc. 39 at 10;

Doc. 40 at 9)

None of the above cases are factually on point with the facts of this case.

Therefore, the question before this Court is whether the facts in this action are so

one-sided that one party, Costco, should prevail as a matter of law. Specifically,

whether the facts so clearly establish that based on the commercial realities of the

gas retail market in a city, that a gas retailer located up to 7.5 miles away on a

---

[16] Notably, this is the same case relied on by the Court in *Tennessean Truckstop, Inc. v. MAPCO Petroleum, Inc.*, 728 F.Supp. 489 (M.D. Tenn. 1990), discussed herein above.

different traffic thoroughfare and that may not be able to accommodate a similar amount of sales is a "competitor" under the AMFMA as a matter of law because those retailers share some amount of customers in common with Costco. This Court does not find that, considering the facts in a light most favorable to Plaintiff, a jury could not find in favor of plaintiff. Rather, a plain reading of *Speedway*, shows that in determining the relevant market area for each of the retailers at issue, the Court looked not only at the distance between one retailer and its alleged competitor, but also the type of commodity, the location of the retailers, the traffic patterns around the retailers, the amenities of the retailer, etc. (*See Speedway,* 782 So.2d at 257 "[T]he Speedway [...] was designed and geographically located to attract the long-haul-truck traffic along the I–65/I–10 freight lane, as evidenced by the *size of the facility*, *its amenities*, and *the surveys conducted by Speedway*. Furthermore, based on the facts of *Tennessean Truckstop* [...]we conclude that the trial court's finding that Speedway was not in competition with the Gulfport Flying J, because the Flying J was *located over 80 miles away* and *on a different Interstate highway*, "ignores the commercial realities of the truck stop competitive market.") (emphasis added). In fact, Costco acknowledges despite its asserted conclusion that "location is a factor in determining Costco's relevant market area" and that "the relevant test does not involve mechanical line drawing, but rather looks to the 'commercial realities of the [] competitive market. (Doc. 40 at 17). Based on *Speedway*, this Court is not satisfied that determining the commercial realities of the retail gas market in Montgomery does not include weighing the factors such as location,

proximity, traffic thoroughfares, accommodations, size, etc.  It is evident that these are the same factors Costco's expert considered when he determined that Costco was competing with all of its tracked competitors from a marketing standpoint and the same factors considered by Russell, Watson, and McGuire when they consider whether another retailer is or is not a competitor in their positions as marketers of retail gas in Montgomery.[17]

In the instant action, Costco has presented undisputed facts and expert testimony that supports its position that is was meeting the price of other retailers within a 7.5 mile radius, which it contends is the relevant market area.  However, A&P has also presented facts which are probative of whether or not those retailers, were competitors under the AMFMA.  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, at this stage, this Court is not required to determine the relevant market area based on the facts, but rather to determine if the A&P has presented facts which materially question whether, at this stage, Costco is entitled to a judgment as a matter of law.  Based on the facts submitted in this case, there exists a question of material fact as to the relevant market area and whether the gas retailers identified by Costco were, in fact, competitors for the purpose of Costco's defense of meeting competition. As a result, Costco's Motion for Summary

---

[17] This Court did not consider the opinions of Russell, Watson, and McGuire which were previously stricken as legal conclusions.

Judgment is denied.

### 3. Good Faith

Costco additionally asserts that there is no question of material fact that Costco was acting in good faith when meeting the price of its competitors. More specifically, Costco asserts that because the gas retailers it was monitoring were, in fact, competitors, its meeting of those retailers' prices was in good faith. (Doc. 22-5 at 29-31). A&P conversely argues that because the gas retailers that Costco was monitoring were not actual competitors, its meeting of those retailers was not in good faith. (Doc. 35 at 5-6). Costco, again, relies heavily on the affidavit of Dr. Robicheaux in addition to the maps of Montgomery showing that all of its selected competitors are within 7.5 miles of Costco and have a number of Costco members who either live or work around the competitors. A&P again relies on the affidavits of Russell, Watson, and McGuire who opine that it is atypical for any gas retailer to monitor the number of competitors that Costco monitors and that there are numerous gas retailers who are closer in proximity to Costco that Costco does not monitor.

First, because this Court has determined that an issue of material fact exists and summary judgment should be denied for the reasons stated above, a discussion of whether Costco acted in good faith is not necessary. However, because a determination on whether or not Costco acted in good faith relies in part on whether or not the retailers it was competing with were actual competitors, there is also a question of fact as to whether Costco acted in good faith in selecting those alleged

competitors.

## CONCLUSION

For the reasons stated above, the Court finds that Costco's Motion to Strike (Doc. 41) is GRANTED in part and DENIED in part as set forth herein above and its Motion for Summary Judgment (Doc. 22-5) is DENIED.

**DONE** and **ORDERED** this 10th day of May, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE